November 9th, 1903.

————o————

## No. 3209.

### (Court of Appeal, Parish of Orleans).

### IN RE THOMAS J. MORAN, PRAYING FOR A WRIT.

1. The attack for incorrectness on a U. S. Government official map in which was located property thereunder sold for delinquent taxes, will not prevail, although such incorrectness was testified to by surveyors skilled in their profession, but not sustained by such competent evidence of record showing that said map was no longer the official map.

2. So, proceedings in a former suit and the testimony of a witness, since deceased, offered to prove the incorrectness of the official map in question, are inadmissible in evidence where the litigants herein were not parties in said former suit and had not the opportunity of cross-examination. Greenleaf Sect. 163 and 164, 32 A. 106.

3. The production and tender in the Appellate Court, after a case is argued and submitted and without the consent of opposing Counsel, of a map intended to be taken in connection with the

testimony of a dead witness and purporting to be his correction of the official map referred to, cannot be considered; being in the nature of new evidence and dehors the Record, C. P. 894, 895.

4. The dual assessment of property, under one of which the taxes due thereon were paid; and under the other sold for the taxes claimed to be due, but paid, will confer no title in the second purchaser. His title is a nullity; he acquires nothing. 42 An. 856. 48 An. 1188.

The judgment appealed from, as to parties, amended and affirmed.

Appeal from Civil District Court, Division —

J. Zach Spearing, for T. J. Moran, Appellant and Plaintiff and Defendant in Injunction.

L. DePoorter, Plaintiff in Injunction, and Warrantor.

Rufus E. Foster, for Stark, in Warranty.

E. C. Kelley, for Holden & Quillan, Intervenors.

W. O. Hart, for Civil Sheriff.

His Honor R. T. Beauregard, Judge, delivered the opinion and decree of the Court in the words and figures following, to-wit:

The execution of a writ of seizure and possession issued at the instance of Thomas J. Moran was enjoined by A. S. Guitterez. joined, in intervention by Wm. J. Holden and by Charles Quillan. Moran predicated his writ on his alleged acquisition at Tax Collector's sale, for the unpaid taxes of 1898 and 1899, as evidenced by the State tax collector's certified deed of sale of July 13, 1900, of the following described property, to-wit: " Certain square of ground and improvements thereon in the Sixth District of the City of New Orleans bounded by Strolitz, Sixteenth, Lowerline or Marley and St. Peter Streets designated as square No. 4 Marleyville."

The allegations of the injunction referred to averred plaintiff's ownership, by purchase of one T. O. Stark of the following described property: "A certain tract of land in the Sixth (late Fourth) District of this City, bounded north by Washington Avenue shell road: South, in part, by Sixteenth Street and in part, by fence of the Illinois Central Railroad; on the West by Lowerline Street and on the East by point of intersection of Illinois Central Railroad with Washington Shell Road of triangular form and measuring

18

700 feet on Washington Avenue Shell Road; about 350 feet deep and converging to a point on the East," this tract forming part of a larger tract of land acquired from the State at Tax Collector's tax sale by T. O. Stark as the property of Mrs. Charles Hamilton for the unpaid taxes of 1872, 1873, 1877, 1878, as evidenced by the tax collector's deed (the Collector of the Fourth, Fifth and Seventh Municipal District of New Orleans) on November 12th. 1889 and subsequently confirmed by deed of sale by the said Mrs. Hamilton to the said Stark.

Said larger tract being thus described: "A certain tract of land situated in the Parish and City of New Orleans commencing at 80 arpents from the Missisippi river, and bounded on either side by the side lines of the old Livaudais Plantation prolonged until they meet in a point and containing by estimation 177 2-3 arpents.

Guitterez, as purchaser, called his vendor T. O. Stark or rather the duly qualified administrator of his Succession in warranty; and Holden and Quillan as Guitterez vendees, each for his separate interest, calling their vendor and the Succession of T. O. Stark in warranty.

Holden's interest involved an outlay, as improvements to the property bought by him of Guitterez and fully described in the pleadings, of $1015.23; and Quillan one of $300; which amounts they pray for in reconvention in case of judgment in favor of plaintiff in writ and their consequent eviction; or, for a term, to be fixed by the Court for a removal of said improvements.

But the decree of the lower Court, after plaintiff-in-writ's unsuccessful attempt at a new trial perpetuated the injunction. And from this decree plaintiff in writ appealed.

The contention on his part is that the property he claims is square No. 4 of Marleyville and situated in the Sixth District of the City outside of the Livaudais Plantation side lines prolonged to a point; whereas the property to which plaintiff in injunction is entitled and to which he should lay claim is situated in the Fourth District of the City and within the side lines of said plantation.

And, in substantiation of his pretensions, he produces maps from an early period of this State's history; the boundaries, deduced from these maps, of the said plantation side lines; with Titles to property showing the transfer to purchasers of part of the said plantation; the adjoining tracts, which at various times have been qualified or designated as Faubourgs Delassise, Plaisance, etc. And he levels his main attack on what is known as the Sulokosky map, which, under contract with the government, purported to be a survey of the Livaudais plantation; but of which, plaintiff urges, the upper line thereof starting too far west, the prolongation of the side lines

instead of meeting at the correct point, incorrectly met at a point far beyond; manifestly showing that if Stark acquired any property at tax sale and as he contends, that property was situated within the side lines of the Livaudais plantation, in the Fourth District in the parish of Orleans and on the lower side of Washington Avenue.

And that furthermore if " Guitterez paid some taxes, as he " contends, they were paid on the tract of land situated in the " Fourth District, as evidenced by the proof in the record, and " separate and distinct from Square No. 4 of Marleyville of which " plaintiff in injunction had illegally and without warrant or author- " ity taken possession."

The points raised by Guitterez and the intervenors are numerous; among others that the nature of Moran's proceedings are petitory and that he can succeed only on the strength of his title. That the sale to Moran was illegal because the land bought, held by and in the possession of Guitterez and his vendees was assessed in their vendor's name; and that, in fact the taxes due on said land having been paid for the years (1898 and 1899) which Moran claimed to have paid, the fact of a dual assessment is presented. That the Sulokosky map which is attacked is the only official map, and the prolongation of the side lines of the Livaudais plantation, which prolongation was made on said map "at the request of Counsel for Moran" showed that the location of the property in question was within the prolongation of said lines.

There can be no question on careful examination of the various maps produced by the plaintiff in writ, supplemented by the testimony of the several Surveyors and especially by the plan or sketch by which Livaudais sold a part of his property to Guy Duplantier that the upper side line of the Livaudais tract did not agree with the drawing of said upper line, on the Sulokosky map and that under plaintiff's contention that the property in question was without the side lines of the Livaudais tract prolonged till they converged to a point, but the Sulokosky map was at the time the property was sold for taxes and bought in by Stark the only official map and the rational presumption must prevail that when the sale for taxes by the State was made, it took place and was effected in view of that map.

The admission in evidence (to which strenuous objection was made by Counsel for Guitterez, etc.,) of that part of the proceedings in the Smythe vs. Canal Bank U. S. C. C., in which Deputy Surveyor Grandjean's testimony who, at the trial of this case was dead, was read to establish the incorrectness of the Sulokosky map should have been excluded as having been given in a suit to which

20

the litigants in this suit were not parties; Greenleaf Vol. I, Section 164 and Seq. and 32 An. 106.

And the Grandjean map made pursuant to his correction of the Sulokosky map and filed with this Court, after the submission to it of this case cannot, on the objection raised by Counsel for Intervenors, be considered as amounting to an offering of new and original evidence in an Appellate Court. C. P. 894.

Owing therefore to the official character of the Sulokosky map it must prevail over the attack as to its incorrectness, and upon which the prolongation of the Livaudais tract side lines include the property in suit.

As it is conceded that his conclusion settles the pivotal question in controversy it would seem that it would be useless to proceed further; but Counsel for plaintiff in injunction directs our attention to the fact that, in the 49 An. 855 case of Fischell vs. T. O. Stark et als, who had been sent in possession of said property by decree of the Civil District Court No. 28,689 of its docket, the titles of Stark and Guitterez had, therein, obtained judicial recognition.

Examination of that case (49 An. 855) shows that, besides the Fischell property, it was the same property in controversy here and acquired by Stark under Act 82 of 1884 for the unpaid taxes of 1879 and prior years. And the language of the Court in the case cited is: "that there is no room to doubt of the legality and validity of the adjudicatee's (Stark's) title."

Turning to the record before us; it shows, in the words of Counsel for plaintiff in injunction that "there was no delinquency for taxes on the part of either Stark or Guitterez; that the taxes of 1898 and 1899, the basis of Moran's title, were paid by Guitterez before the adjudication to Moran by the State Tax Collector in 1900.

Such payment implied either a dual assessment of the same property or a sale of it for taxes already paid which nullified the sale and conferred no title in the purchaser. 48 An. 1188.

For the foregoing, the judgment appealed from should be sustained; but owing to the death of Appellee, Alfred S. Guitterez, which took place since the submission of this cause to which his widow; Mrs. Adele Caroline Rey, the duly appointed and qualified administratrix of her husband's succession (No. 71,620 of the Docket of the Civil District Court) has now been made a party, the decree appealed from should be so amended as to read:

"It is ordered, adjudged and decreed that there be judgment herein in favor of Mrs. Adele Caroline Rey the widow and duly appointed and qualified administratrix of the succession of her husband, Alfred S. Guitterez, the plaintiff in injuncton and in favor of

Wm. J. Holden and Charles Quillan. intervenors herein and in favor of Mrs. Adele Caroline Rey, widow and administratrix and H. Osborne Stark, adminsitrator of the Estate of T. O. Stark, called in warranty herein, and against Thomas J. Moran plaintiff herein, pray-ing for a writ of possession, perpetuating the injunction herein issued and rejecting the demand of said Thomas J. Moran, with all costs incurred by the plaintiff in injunction, the intervenors and the warrantors herein. And as thus amended the decree appealed from is affirmed.

November 9th, 1903.